IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT,<br><br>Plaintiff,<br><br>v.<br><br>MARK LANE, Owyhee Field Manager, and BUREAU OF LAND MANAGEMENT,<br><br>Defendants. | Case No. CV-07-394-S-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it a motion for temporary restraining order filed by plaintiff WWP. The Court heard oral argument from both sides on September 25, 2007, and took the motion under advisement. For the reasons expressed below, the Court has now decided to deny the motion.

## STANDARD OF REVIEW

A moving party is entitled to a preliminary injunction if it demonstrates that it is likely to succeed on the merits and may suffer irreparable injury, or that serious questions exist on the merits and the balance of hardships tips in its favor. *See Self-Realization Fellowship Church v. Ananda*, 59 F.3d 902, 913 (9th Cir.

**Memorandum Decision and Order – Page 1**

1995). The two tests are not separate but represent a sliding scale in which the required probability of success on the merits decreases as the degree of harm increases. *Id.* "Under any formulation of the test, the plaintiff must demonstrate that there exists a significant threat of irreparable injury." *Oakland Tribune, Inc. v. Chronicle Publishing Co.,* 762 F.2d 1374, 1376 (9th Cir.1985).

## ANALYSIS

WWP seeks to block the Castlehead Fire, a prescribed burn originally planned by the BLM to cover 3,200 acres, but now scaled back to 2,600 acres. The burn is to begin tomorrow, September 26, 2007. The BLM's stated purpose is to reduce hazardous fuels resulting from the encroachment of the Western Juniper.

On September 8, 2006, the BLM issued a Decision Memorandum finding that the burn qualified for a Categorical Exclusion from the requirements of NEPA. Specifically, the BLM relied upon the exclusion for hazardous fuels reduction. That exclusion was "intended to protect lives, communities, and ecosystems from the risk of high-intensity wildland fire." *See 68 Fed. Reg. 33814 at p. 33815 (June 5, 2003).*

WWP did not appeal the BLM's decision. Instead, the BLM waited until just four days before the burn was to begin to file this motion. The late filing results in a rushed analysis, not conducive to the reflection necessary for issuing

the extraordinary relief of an injunction.

WWP explains its late filing by pointing out that the Tongue Complex fire – which was not under control until July of 2007 – changed conditions, warranting an injunction. Yet WWP also raises other arguments that it could have raised a year ago and have nothing to do with the Tongue Complex fire. Perhaps in fairness, WWP should be limited to arguing the Tongue Complex fire changes, although the Court has examined all of WWP's arguments.

With regard to the Tongue Complex fire, while its perimeter encloses some 47,000 acres, it appears from the BLM's analysis that only about 30% of those acres actually burned. It is also appears from BLM counsel's argument that the BLM's failure to file a Stabilization report within 21 days was merely a failure to follow an internal guideline, not the violation of a rule. At any rate, the Tongue Complex fire does not provide any concrete basis for injunctive relief.

WWP argues that the BLM is conducting a vegetation management project rather than a hazardous fuels reduction program that would qualify for a Categorical Exclusion. The Castlehead Fire is an attempt to control vegetation – specifically, the Western Juniper. However, control of that vegetation appears to be part of a broader strategy to reduce catastrophic wild fires. The Castlehead Fire is to be conducted under the Juniper Mountain Landscape Restoration Strategy,

**Memorandum Decision and Order – Page 3**

covering the 288,000 Juniper Mountain watershed.

The Strategy notes that the encroachment of Western Junipers in the Intermountain West and Columbia Basin is "resulting in high severity fires." *See Strategy* at p. 3. It appears that the Strategy seeks to promote diversity by reducing the encroachment of Western Juniper, which would return the area to more-frequent but less-intense fires. The Strategy notes that the 1997 Idaho Sage Grouse Management Plan "identifies juniper encroachment as a threat to sage-grouse habitat and recommends using prescribed fire in mountain big sagebrush communities to restore normal fire frequencies which promote a variety of succulent vegetation . . . ." *Id*. at p. 4.

It appears that Western Junipers burn less frequently but with greater intensity. This results in a loss of diversity because sagebrush, bunch-grasses, and aspen require more frequent fires that are less intense. Thus, as Western Junipers multiply, they crowd out these other types of vegetation.

Thus, controlling Western Juniper is a vegetation management project, but it also appears at the same time to be a catastrophic fire reduction project. In that sense, the Western Juniper may be a hazardous fuel, although the Court need not so find, and refuses to do so on such a hurried examination. It is enough to say that WWP is not likely to succeed in showing that the Western Juniper is not a

**Memorandum Decision and Order – Page 4**

hazardous fuel.

WWP challenges the BLM's justification of this project as a research project, pointing out accurately that this research aspect was not discussed at all in the Decision Memorandum. If the research aspect changed the nature of the burn, WWP's argument would be strong. However, that does not appear to be the case here. Instead, it appears that once the parameters of the burn were set, scientists from the SageSTEP program obtained authorization to conduct experiments within those existing parameters. Because there is no evidence that the research changed the nature of the project in any way, the BLM's failure to discuss it in the Decision Memorandum is not fatal to the Categorical Exclusion.

For all these reasons, the Court cannot find that WWP is likely to successfully challenge the Categorical Exclusion. Turning to the Extraordinary Circumstances issue, the Court finds important the Declarations from experts explaining the importance of going forward with the fire. For example, Steven Knick, one of the primary authors of the Conservation Assessment for Greater Sage Grouse and Sagebrush Habitats, describes the Castlehead Fire as a "unique opportunity" to study the effects of prescribed burns on Sage Grouse habitat. Other Declarations describe the beneficial effects of such prescribed burns on habitat. While wild fires will frequently result in the encroachment of cheatgrass,

**Memorandum Decision and Order – Page 5**

that appears less likely here because the elevation is above 5,000 feet. *See Declaration of Steven Jirik.*

For all of these reasons, the Court cannot find that WWP has a chance of success on the Extraordinary Circumstances issue.

## CONCLUSION

The Court will deny WWP's motion. However, this decision cannot stand as precedent for any future prescribed burn. Most importantly, this decision is limited entirely to the facts of this case, and does not establish that prescribed burns such as this generally qualify for Categorical Exclusions.

## ORDER

In accordance with the Memorandum Decision above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion for Temporary Restraining Order (Docket No. 5) is DENIED.

DATED: **September 25, 2007**

B. LYNN WINMILL
Chief Judge
United States District Court